## GIBSON *v.* WARDEN.

1. Under the statutes of Ohio authorizing chattel mortgages, a seal is not necessary to their validity.

2. Where one partner, R. M., affixed his name and seal to an instrument whose *testatum* set forth that " R. M. & Sons, by R. M., one of the firm, had thereto set their hands and seals," the instrument may be regarded as the deed of all the partners on proof that prior to the execution the others had authorized R. M. to execute the instrument, and after execution, with full knowledge acquiesced in what he had done..

3. The two clauses of the 35th section of the Bankrupt Act, differ mainly in their application to two different classes of recipients of the bankrupt's property or means, that is to say, the first clause is limited to a creditor, a person having a claim against the bankrupt, or who is under any liability for him, and who receives money or property by way of preference; and the second clause applies to the purchase of property of the bankrupt by any person who has no claim against him, and is under no liability for him.

APPEAL from a decree of the Circuit Court for the Southern District of Ohio, in a bill in equity filed by Warden & Ludlow, assignees of Moore & Co., against David Gibson, and against Gaylord, Son & Co., and other defendants. The matter in issue was the validity, in view of the bankrupt law, of two chattel mortgages, given by the bankrupt, one to the said Gibson, and the other to the said Gaylord, Son & Co. The mortgages were asserted to be frauds on the bankrupt law, as coming within either the first clause or the second of the 35th section of the Bankrupt Act. The first clause reads thus :

" If any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor · or person having a claim against him, or who is under any liability for him, procures any part of his property to be attached, sequestered, or seized on execution, or makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, assignment, transfer, or conveyance, or to be benefited thereby or by such attach-

ment, having reasonable cause to believe such person is insolvent, and that such attachment, payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited."

The second clause read thus:

"And if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of the act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be *primâ facie* evidence of fraud."

The court below decreed that the mortgages were invalid, and secured no priority, and that the defendants stood on the footing of general creditors. Gibson appealed, as did Gaylord & Sons; the other defendants did not appeal.

*Mr. Aaron F. Perry, for the appellant, Gibson; Mr. E. M. Johnson, for the appellants, Gaylord & Son; no counsel for the appellees.*

Mr. Justice SWAYNE stated the case more particularly, and delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court for the Southern District of Ohio.

The appellees are the assignees in bankruptcy of Robert

Moore & Sons, and filed this bill to compel such of the defendants as claimed to have liens upon certain effects of the bankrupt firm to have their respective rights touching the property in question ascertained and adjusted by the decree of the court. The decree rendered, disposed of the several cases litigated under the bill. All the defendants acquiesced in the decisions made, except David Gibson and Gaylord, Son & Co. They have brought the decree of the Circuit Court, so far as it affects them, here for review by this appeal. Our examination of the case will be confined to their respective claims.

On the 8th of March, 1868, Moore & Sons executed to Gibson a chattel mortgage. It was conditioned that if the mortgagors should pay to Gibson their promissory note to him of the same date with the mortgage, for $6000, payable sixty days from date at the Central National Bank of Cincinnati, the instrument should be void. The testatum clause set forth that Robert Moore & Sons, by Robert Moore, one of the firm, had thereto set their hands and seals. Robert Moore alone affixed his name and seal to the document. The amount claimed by Gibson under the mortgage was indorsed and sworn to by him, and the instrument was filed with the proper officer on the 18th of the same month. On the 21st of that month Moore & Co. failed in business, and made a general assignment of all their effects for the benefit of their creditors. On the 15th of September, 1868, a petition in bankruptcy was filed against them, under which they were subsequently adjudged bankrupts, and the appellees were appointed their assignees in that proceeding.

The note mentioned in the mortgage was indorsed by Gibson for the accommodation of the makers. They procured it to be discounted, and the proceeds went to their benefit. Gibson was compelled to pay it. The amount thus paid, with interest, constitutes his claim under the mortgage.

No statute of Ohio directs how a chattel mortgage shall be executed The statutes regulating such instruments are silent upon the subject. Our attention has been called to

no local adjudication touching the point. In an elementary work prepared by an eminent jurist of that State the form given purports a sealed instrument, and has a seal affixed to it.*

Such instruments in Ohio are usually under seal. But the term *mortgage* used in the statutes does not import or imply that a seal is necessary. In regard to chattels, it is a *mortgage*, and not a *deed of mortgage*, that is required. The distinction between real and personal property and between the means which are necessary to affect them is well settled. Personal property, according to the common law, could always be transferred or incumbered without the use of a deed for that purpose. A seal has never been held necessary to the validity of a bill of sale. A chattel mortgage is only a bill of sale with a defeasance incorporated in it. The presence or absence of that formality is wholly immaterial. In the case before us it may be regarded as surplusage.†

There is another view of the subject that must not be overlooked. There is proof in the record that the partners, other than Robert Moore, authorized him in advance to execute the mortgage, and after its execution, with full knowledge, acquiesced in what he had done. If the law had required a seal these circumstances would have made the instrument the deed of the firm—as much so as if all the members had been personally present and assented to its execution in that form.‡ This is not inconsistent with the principle, which seems to be too deeprooted in the law to be wholly eradicated by judicial authority, that a sealed instrument executed in the name of a firm by one of its members, without the proper authority, where a seal is necessary, is the deed of such member only, and that he alone is bound by it.

---

* Swan's Treatise, 692.

† Milton et al. *v.* Mosher, 7 Metcalf, 244; Tapley *v.* Butterfield, 1 Id. 515; Despatch Line *v.* Bellamy Manufacturing Co., 12 New Hampshire, 234.

‡ Story on Partnership, p 212, § 122; Purviance et al. *v.* Sutherland, 2 Ohio State 478; Cady *v.* Shepherd, 11 Pickering, 405; Gram *v.* Seaton, 1 Hall 262.

The statute provides that every mortgage of goods and chattels, where there is no change in the possession of the things mortgaged, "shall be absolutely void," as against subsequent purchasers and mortgagees in good faith, "unless the mortgage, or a true copy thereof, shall be forthwith deposited" with the proper officer. The Supreme Court of the State has held that the omission to deposit *forthwith,* as directed, does not avoid the mortgage *in toto,* but that, whenever deposited, it becomes effective from that time.* That court has also held that actual notice to a subsequent mortgagee, before his mortgage is taken, is conclusive evidence of *mala fides* on his part.†

In cases like this the assignees stand in the place of the bankrupt; his rights are their rights; and theirs, like the liens of judgments at law, are subordinate to all the prior liens, legal and equitable, upon the property in question.‡

This mortgage was deposited three days less than six months before the filing of the petition in bankruptcy.

This raises a question under the bankrupt statute which it is necessary to consider.

The first clause of the 35th section avoids certain acts of the bankrupt touching his effects, if done within four months before the filing of the petition in bankruptcy. The second clause imposes the like result, if the transaction be within six months of that time.

To bring a case within the first clause the act must have been done by a person insolvent, or in contemplation of insolvency, with a view to give a preference to a creditor or person having a claim against, or who is under a liability for, the bankrupt, and such person must have reason to believe that the transaction is in fraud of the statute.

The category of the second clause contains the same re-

---

* Wilson *v.* Leslie, 20 Ohio, 161.

† Kendall & Co. *v.* Mason, 7 Ohio State, 199.

‡ Lempriere *v.* Pasley, 2 Term, 485; Belcher *v.* Oldfield, 6 Bingham's New Cases, 102; Doremus *v.* Walker, 8 Alabama, 194; Peck *v.* Jenness, 7 Howard, 612; Fletcher *v.* Morey, 2 Story, 555; Archbold on Bankruptcy 314.

quirement of insolvency, or contemplation of insolvency, on the part of the person doing the act. The recipient may be any one who has reason to believe him insolvent or acting in contemplation of insolvency, and that the act was done by him to prevent the property from coming into the hands of his assignee in bankruptcy, and from being distributed under the bankrupt law.

Upon comparing the two clauses carefully together we are satisfied that the first clause was intended to refer to the past and the second to the present. The language employed in the first clause imports clearly that the consideration must be one growing out of a former transaction, and that the recipient must stand in the relation thus created to the other party. It is equally clear that the second clause, enlightened by this construction of the first one, must be limited to cases where the transaction in question was original and complete in itself at the time it occurred, and had no reference for its consideration to anything between the parties which had gone before it. It is only by this construction that the two clauses can be made to harmonize and full and distinct effect be given to each. Any other construction would make them cover the same ground and obliterate everything by which one is differenced from the other, except the limitation of time which they respectively prescribe. It is not to be supposed that such was the intention of the law-making power. This view of the subject was taken by the Circuit Court for the District of Missouri, and subsequently there by one of the justices of this court. We can see no answer to the conclusion at which they arrived.* According to this construction the mortgage to Gibson falls within the second category, as to the time within which its validity could be challenged. Is it therefore void? To this there is a conclusive answer in the negative.

The statute of Ohio deprived the mortgage of effect until "deposited"—as to *creditors, subsequent purchasers, and mortgagees in good faith.* These assignees are neither. As be-

---

* Bean *v.* Brookmire, 10 American Law Register, N. S. 181.

tween the mortgagor and the mortgagee and subsequent mortgagees and purchasers with notice, the mortgage was valid and took effect from the time of its delivery to Gibson, which was the 8th of March, more than six months before the filing of the petition in bankruptcy.

The mortgaged premises have been converted into money. But this does not affect the rights of the parties. The lien of the mortgage followed the fund into the hands of the assignees, and binds it there in all respects as it bound, before conversion, the property which the fund represents.*

Gaylord, Son & Co. indorsed for Moore & Sons to the extent of $10,000, as early as May, 1867, which was repeated from time to time. In May, 1868, Moore & Sons applied to them for a definite arrangement for indorsements to the extent of $20,000, to be secured by a chattel mortgage. After inquiry, they agreed to indorse for $15,000, and possibly $20,000, their liability to be secured as proposed. In pursuance of this arrangement, on the 23d of January, 1868, they indorsed for $5000, and afterwards made other indorsements, amounting in all to $17,000. The first mortgage was made on the 27th of January, 1868. It was held by Gaylord, Son & Co., and not filed. Later—probably in March—Moore & Sons pressed for further indorsements, which were refused. Shortly afterwards Moore & Sons advised Gaylord that judgments were about to be taken against them, but insisted they were solvent. The mortgage was shown to counsel, who objected to it, but upon what ground does not appear. He advised that another should be taken. This was done on the 18th of March, and the mortgage was deposited on the same day with the proper officer, but some hours later than the deposit of the mortgage to Gibson. It appears by the face of the instrument that the signature and seal of the firm were affixed by one of the firm in the absence of the others. There was the same prior authority and subsequent acquiescence as in the case of the Gibson mortgage. It recited that Gaylord, Son & Co. were liable

* Astor *v.* Miller, 2 Paige, §§ 68-78; Sweet *v.* Jacocks, 6 Id. 355.

as indorsers and otherwise for certain debts of Moore & Sons; that Moore & Sons were indebted to Gaylord, Son & Co.; and that Moore & Sons were desirous to renew their paper with the indorsement of Gaylord, Son & Co., and was conditioned that if Moore & Sons should save Gaylord, Son & Co. from loss by reason of said indorsements and debt— Gaylord, Son & Co. agreeing to renew for eighteen months —then the mortgage was to be void.

After the failure of Moore & Sons, Gaylord, Son & Co. took up notes which they had indorsed for the mortgagors, amounting to $17,000. The mortgagees also held a note of the mortgagors for iron sold by the former to the latter, amounting to $400, making the aggregate of the indebtedness of Moore & Sons to Gaylord, Son & Co., exclusive of interest, $17,400.

We hold this mortgage also to be valid under the laws of Ohio. The views we have expressed as to the Gibson mortgage, considered with reference to the statutes of Ohio, apply equally to the one here under consideration, and render it needless to say anything further upon the subject.

Being founded upon a past consideration, it falls within the first clause of the 35th section of the bankrupt law, which limits the right of attack upon such instruments to those executed within four months prior to the filing of the petition in bankruptcy. In respect to this statute also it must, therefore, be held valid. It was upon the same property as the mortgage to Gibson. Like that mortgage, its force and effect reach and bind the fund into which the property has been converted.

It was contended with great ability by the counsel of Gaylord, Son & Co. that as regards the limitations of time under the 35th section of the bankrupt law this mortgage must be regarded as if it had been executed at the date of the prior one for which it was substituted, and numerous authorities were cited to sustain the proposition. The view we have taken of the case has rendered it unnecessary to consider this point.

The counsel representing both mortgages, in the argument in this court, advised us that we need not decide the question of priority as between the two instruments, they having made an agreement which fixes their respective rights. We have not, therefore, considered the question. If there be any surplus after satisfying these claims it must be distributed to the general creditors.

So much of the decree of the Circuit Court, as is brought before us by this appeal, is REVERSED, and the cause will be remanded to that court, with directions to enter a decree

IN CONFORMITY TO THIS OPINION.