Okey, J.
The petition does not show that Lindemann filed the deed of assignment in the probate court, pursuant to the acts relating to assignments by debtors to assignees for the benefit of creditors, nor that he acted under the orders of that court in doing the things of which Ingham & Brothers complain ; and hence, the questions sought to be made by the plaintiff in error may not arise on the petition. But these facts are alleged in the sixth defense ; and Ingham & Brothers demurred to -that defense, and the court sustained the demurrer. It seems, therefore, pertinent to inquire whether, if the petition had embraced the additional matter set forth in that defense, it would have contained facts sufficient to constitute a cause of- action. *9 If a petition in tbat form would have been sufficient, it is clear tbat the court properly sustained the demurrer to that defense; but if the facts alleged in the petition and in the sixth defense, when taken together, would constitute no cause of action, the court erred in sustaining the demurrer.
Counsel for defendants in error have, with great industry, collected more than three hundred cases, which are claimed to bear on the question involved in this- case. ¥e deem it unnecessary, in this report, to do more than state the result of our examination of them. We entertain no doubt that the general rules of law with respect to chattel mortgages are as claimed by counsel for defendants in error in their able argument. These rules have been recognized in a number of our cases. Thus, in Robinson v. Fitch, 26 Ohio St. 659, 663, it was said: “A chattel mortgage in the usual form conveys to the mortgagee the property mortgaged, and he thereby becomes the general owner of it, and in the absence of a reservation of the right of possession in the mortgagor, he is entitled to the immediate possession of it. If there is such a reservation in favor of the mortgagor, such reservation only affects the possession according to the terms of the reservation, the title to the property remaining, in the meantime, in the mortgagee, who becomes entitled to the immediate possession on breach of the condition.” Gilmore, J.
But this is not inconsistent with the existence of an equity in the mortgagor, notwithstanding a breach in the condition of the mortgage. This is well illustrated in the instructive case of Carty v. Fenstemaker, 14 Ohio St. 457. It appeared in that case that Oarty caused personal property in possession of Alspach to be seized on an attachment as the goods of Alspach. There was, at the time, a chattel mortgage upon the property in favor of Fenstemaker,. executed by Alspach, and the condition therein was then broken, so that the mortgage had become absolute. Eenstemaker obtained possession of the property from the officer by replevin, and thereupon took from Alspach an assignment of all his interest in the property that might remain after satisfying the mortgage debt. Carty having subsequently obtained judgment against Alspach, in the *10 action wherein, the attachment was issued, brought suit against Fenstemaker to reach that portion of the proceeds of a sale of the property which might remain after satisfying the mortgage debt. The court held, that while the officer was not entitled, under the provisions of the statute relating to attachments, to retain possession of the property as against such mortgagee, yet that, notwithstanding the condition of the mortgage was then broken, a lien was secured by the levy of the attachment, in favor of Carty, upon any balance that might remain after satisfying the mortgage debt; that this lien was superior to the rights of Fenstemaker under his assignment from Alspach subsequently made ; and, further, that the lien thus 'secured by the attachment might be enforced by Carty in an action against Fenstemaker. See, also, Morgan v. Spangler, 20 Ohio St. 38.
Nor is the general rule of law, as to the rights of the mortgagee, inconsistent with, but it is subordinate to, another wrell settled rule which is thus expressed in Smith v. Parsons, 1 Ohio, 233, 242: “ Contracts must be expounded according to the laws in force at the time they were made; and the parties are as much bound by a provision contained in a law, as if that provision had been inserted in, and formed part of, the contract.” Burnet, J. And see Jewett v. Railway, 34 Ohio St. 601, 607; Brine v. Insurance Co., 96 U. S. 627.
If the statute in force at the time of the execution of the mortgage under consideration in Carty v. F&mtemaker, had provided that an officer levying an attachment, as in that case, should sell the property on the attachment, holding possession in the meantime, and after satisfying the mortgage debt out of the proceeds of the sale, apply the balance, so far as needed for the purpose, in satisfaction of the attachment, no serious doubt can be entertained that the act would have been valid. It would have been a perfectly lawful mode of reaching any possible interest the mortgagor might have in the property, without resorting to a suit against the mortgagee.
The mortgage in this case was executed on April 2, 1874, and according to the principle stated, the mortgagees were liable to be affected, as to their remedies on the mortgage, by the provisions of our statutes then in force relating to assign *11 ments. This clearly appears from Hanes v. Tiffany, 25 Ohio St. 549. There the affidavit on the mortgage was wholly defective, so that the mortgage was void as against the creditors of the mortgagor. The court held that it was also void as against an assignee for the benefit of creditors. That case was not decided in ignorance of the general rule on the subject. As to the claim that the assignee could stand in no better condition than the assignor, "White, J., distinctly stated that “the correctness of this position at common law is admitted.” And the supreme court of the United States has repeatedly held that the common law rule is applicable under the bankrupt law. Gibson v. Warden, 14 Wall. 244; Stewart v. Platt, 101 U. S. 731. But the decision in Hanes v. Tiffany, approved in Kilbourne v. Fay, 29 Ohio St. 264, 278, is a clear and distinct recognition of the principle that a mortgagee of personal property takes his mortgage subject to the provisions of our assignment laws in force at the time, and that under those laws the assignee stands in a better position than the assignor.
We come now to consider the condition of the law relating to assignments at the time the chattel mortgage in question was executed. The act of 1859, “ regulating the mode of administering assignments in trust for the benefit of creditors ” (56 Ohio L. 231, 4 Curwen, 3352), was amended in various particulars (57 Ohio L. 39, 117; 58 lb. 3, 105 ; 60 lb. 8 ; 69 lb. 172; 71 lb. 28, 73; 73 lb. 146), re-enacted with its amendments in 1878 (75 Ohio L. 936), and finally incorporated into the Revised Statutes, §§ 6335-6358. As it existed in 1874 (1 Swan & Or. 709, Swan & Sayler, 395), at the time the mortgage in question was executed, it provided a comprehensive, though by no means perfect mode of administering assignments in the probate courts for the benefit of creditors. It extended to assignments of property of every sort, and plainly included the right of a mortgagor of chattels, as well' before as after condition broken. The assignee was required to file the deed of assignment or a copy thereof with the probate judge, and to give bond for the faithful performance of his duty, on which bond any person injured by the misconduct or neglect of duty of the assignee might bring suit, to cause an *12 inventory and appraisement of the property to be made under oath, and returned to the probate court; to file in the probate court, at the same time, a schedule, under oath, setting forth all the debts and liabilities of the assignor within the knowledge of the assignee ; to cause notice to bo given in some newspaper of general circulation in the county of his appointment as assignee., in which notice he shall require creditors to present their claims; and, under the orders of the probate court, to convert all the assets into money, sell the real and personal property, either for cash or upon such other terms as the probate court may order, and make return of such sales to the probate court.
The laws then in force further provided that the creditors should present their drams to the assignee for allowance within six months after publication of notice of his appointment; that “ the probate court shall order the payment of all incumbrances and liens upon any of the property sold, or rights and credits collected, out of the proceeds thereof, according to priority ;” and that at the expiration of eight months from the appointment, “a dividend shall be declared, payable out of the assets of the assignor applicable to the payment of non-preferred claims.”
These provisions show very clearly that the legislature intended to vest in the probate court full and complete jurisdiction over the whole subject of assignments of this character. True, the court is so organized as to render it impracticable that it should exercise jurisdiction in actions for money against the debtors of the assignor. It is also. true, that where the real estate assigned is incumbered with liens, the assignee may file a petition to sell the same in the court of common pleas. This provision was made because of the complex questions which are sometimes presented in regard to liens on real estate, embracing, as they do, questions as to liens by mortgage and judgment, liens by execution foreign and domestic, vendor's liens, mechanics’ liens, liens of occupying claimants, and others. But even questions of this character may be determined in the probate court.
The express exception that the petition, in the case just *13 mentioned, may be filed in tbe court <of common pleas, affords additional evidence that the legislature intended that in all other respects the jurisdiction of the probate court, in the administration of the trust, should be exclusive, though not final, for there is the right to appeal or prosecute error. TIence, as the equitable interest of the mortgagor passed with possession of the property to the assignee, complete jurisdiction as to that interest was vested in the probate court, when the assignee took the proper steps and obtained the proper orders in that court. The only way in which that court could deal with that interest was to order a sale of the property free of all claims, the interest of the mortgagees being transferred to the fund arising from the sale by the assignee ; and upon full consideration we are satisfied that is the proper construction of the statute, and that an assignee is not placed, by the law in the dangerous position of being compelled to determine, at his peril, whether or not he should obey the order of the court. What the rights of the parties may be where the assignment is made to prevent the mortgagee from taking possession of the property, and for the mere purpose of placing it in the hands of an assignee selected by the mortgagor himself, we need not determine.
It is said, however, that a mortgagee, after condition broken, has no lien upon the property, as he is the owner, and hence that the statutory provision to which reference has been made does not apply. That the mortgagee is the owner in the sense that there is no interest in the mortgagor remaining after condition broken, which the mortgagor, his creditor, or assignee, can assert, is a proposition which finds little support elsewhere, and, as we have seen, none in Ohio. Where the mortgage debt equals the value of the property, the remaining equity of the mortgagor may be of no real value; but where the debt is small and the value of the property great, the interest of the mortgagor may be many times as large as the interest of the mortgagee, though the latter is called the legal title ; and finding that the assignee has authority to sell, in every such _ case,, when authorized by the probate court to do so, even in opposition to the will of the mortgagee, the rights of the latter can *14 only be protected by holding that they are embraced by the phrase in our assignment law, “ incumbrances and liensand such we are clear is the proper construction of the statute.
I am awai’e that it is expressly provided that a purchaser of real estate, under the assignment laws, shall take “ the title free from all liens on the same for all debts due by the assignor.” From the absence of any such provision as to personal property, it is supposed the same rule does not apply in the case of a sale of chattels. But this is clearly an erroneous view. The provision follows that clause of the statute which requires that “ deeds shall be made to the purchasers,” a form which is not required where the assignee sells chattels. It would be unreasonable to say, looking at the various provisions of our statutes on the subject, that the legislature intended that the rule, cmeat emptor, should apply in its largest sense to purchasers at a sale by an assignee, where the property was personal, but that they should take the property, if real estate, discharged of all liens. A fair construction of the statutes require us to say there is not one rule as to lands and another as to chattels; and that in Ohio, under the circumstances here disclosed, “the maxim, cmeat emjptor, does not apply to the case of a sale by assignees for the benefit of creditors ” (Burrill on Assignments, 3d ed. § 416 ; 2 Hovenden on Frauds, 35 ; Adams v. Humes, 9 Watts, 305), whatever the character of the property may be.
Dwyer v. Garlough, 31 Ohio St. 158, is not inconsistent with the conclusion at which we have arrived. There a mortgage of real estate had been executed by husband and wife, but there was no provision in the statute authorizing the wife to be made a party in the probate court in any proceeding on the part of- the assignee to sell the premises. As complete relief could not be granted to the mortgagee in the probate court, it was held that he might bring suit on the mortgage in the court of common pleas, notwithstanding the assignment.
The statute contains no express provision for notice to the mortgagee of the proceedings to sell. Notice in some form was essential. Ray v. Norseworthy, 23 Wall. 128. Whether this requirement is satisfied by the public notice given, we heed not determine. The facts set forth in the statement of *15 tlae case tend to show not only notice to the defendants in error, but consent, on their part that Lindemann should dispose of the property as assignee. The proceedings of the probate court .are not set forth at large in the record. Moreover, the jurisdiction of that court having been properly invoked, its orders, however irregular, cannot be questioned in this collateral way. Shroyer v. Richmond, 16 Ohio St. 455.
Of course, the act regulating assignments does not undertake to invest the assignee with property which did not belong to the assignor; nor is the interest of a mortgagee any less now than it was before the assignment law was passed. But the interest of an insolvent debtor as mortgagor of chattels, in possession, is as .large now as it was before the passage of that act; and it is clear that whatever that interest may be, it passes, as we have said, by the assignment. We place this case distinctly on the ground, that under provisions of our statutes in relation to assignments, in force when the mortgage to Ingham & Brothers was given, and°which statutes remained in force during the pendency of the proceedings in the probate court, Jacobi & Sehoeule, the mortgagors in possession, though the condition of the mortgage was broken, could make an assignment of the chattels mortgaged to an assignee for the benefit of creditors; and that when the assignment was filed in the probate court, and the proper orders were obtained from that court, it was the duty of the'assignee to sell the property, notwithstanding any objections of the mortgagees, their interest therein being transferred to the fund arising from the sale, and the rights of the mortgagees and the creditors must be worked out in the proceeding in the probate court. Whether, in a case like this, where the fund is insufiieent to satisfy the mortgage debt, any of the costs and expenses of administering the'trust can be taken from such fund, and what the rights of the mortgagees may be with respect to the moneys realized from the sale and ordered to be distributed, are- questions which we are not called upon to determine. Nor have we considered what the rights of the parties may be where the mortgagee is in possession at -the time of the assignment.

Judgment reversed.

*16 This case was decided while Gilmore, O. J., was a member of the court.