## DOUGLASS, Assignee, etc., *v.* VOGELER.*

*(District Court, S. D. Ohio.* February, 1881.

1. BANKRUPT LAW—SECURITY FOR ADVANCES.

     A security given by an insolvent debtor, for money advanced to him at the time, is not in violation of the bankrupt law.

2. SAME—SECURITY FOR INDORSEMENTS.

     And the same principle would apply to a security given for a liability assumed (*i. e.*, as an indorser) upon which money is raised for the bankrupt.

3. SAME — SAME — SECURITY SUBSEQUENTLY GIVEN — AGREEMENT FOR, NEED NOT BE IN WRITING.

     And if such advancement is made, or obligation assumed, upon an agreement that the bankrupt would execute a mortgage upon certain personal property to secure such advances or such assumed liability, a mortgage in pursuance of such agreement **will** be valid; and it is not necessary that such agreement should be in writing.

4. SAME—EXCHANGE OF SECURITIES.

     An exchange of securities is not in violation of the bankrupt law.

5. UNRECORDED CHATTEL MORTGAGE—VALID BETWEEN MORTGAGOR AND MORTGAGEE.

     As between mortgagor and mortgagee, a chattel mortgage is valid without being recorded.

6. SAME—ASSIGNEE IN BANKRUPTCY—BANKRUPT—CREDITORS.

     In relation to liens of this character, the assignee occupies only the position of the bankrupt, and therefore is precluded from disputing their validity.

In Bankruptcy.   Exceptions to Register's Report.

*Long, Kramer & Kramer,* for assignee.

*Butterworth & Vogeler, contra.*

SWING, D. J.   The petition in this case alleges that Otto Taxis, being insolvent, on the twenty-fifth day of April, 1877, executed to Frederick Vogeler, to whom he was indebted in the sum of $1,500, and who was also liable as indorser for him, a chattel mortgage; that the mortgage was made to secure the sum of $5,000, and was made by said Taxis with intent to give a preference to the said Vogeler, and with intent to defeat the

*Reported by Messrs. Florien Giauque and J. C. Harper, of the Cincinnati bar.

operation of the bankrupt law; and that said Vogeler, at the time the chattel mortgage was made to him, had reasonable cause to believe that Taxis was insolvent, and knew that a fraud upon the bankrupt law was intended. The plaintiff therefore prays that the mortgage may be set aside. The defendant, by his answer, admits the making of the mortgage, but denies all the other allegations of the petition, and claims that the mortgage is a valid, subsisting lien.

The case was referred to Register Ball for the taking of testimony and for an opinion therein. The register has reported the testimony and his findings. The register reports that from the evidence in the case Taxis was insolvent when the mortgage was executed, and that Vogeler had reasonable cause to believe he was insolvent, and therefore the mortgage should be set aside; and the cause is now for hearing upon the report of the register and the evidence in the cause.

The defendant claims that the conclusion to which the register arrived is erroneous. He claims that the mortgage was given in substitution of a former mortgage, and for credit and advances made in pursuance of an agreement that the mortgage should be given, and therefore it was valid, although Taxis may have been insolvent, and the defendant may have known that fact.

The evidence in the case shows that in January, 1876, Vogeler loaned to Taxis $3,000, for which he took a chattel mortgage on the fixtures and chattels in a drug store on Broadway, and on a bottling establishment in the same place. This loan was for one year, evidenced by a note for $3,000, and two notes for $120 each, for the semi-annual interest at 8 per cent. It further appears that this mortgage was delivered to Vogeler, but was never recorded. When the note became due he paid one-half of it. And it further appears that about the first of April, 1877, Vogeler agreed to assist Taxis to raise money to relieve him from embarrassment by indorsing for him, and that, to secure him, Taxis agreed to give him a mortgage upon the Fifth street store property, and upon the Broadway property, which was already mort-

gaged. It further appears from the evidence that on the third day of April, 1877, Vogeler gave to Taxis a note for $600. On the twelfth of April, three notes of Taxis to A. Wolf for $375 each were indorsed by Vogeler; on the sixteenth of April a note for $700; on the twenty-fifth of April a note for $310; and on the fifth day of May, 1877, a note for $500 was given,—making in all $3,235. It further appears that on the twenty-fifth day of April a chattel mortgage was given, which was filed on the eleventh day of May, 1877. And it further appears that on the twenty-second day of June proceedings in bankruptcy were instituted against Taxis. The proof shows that all the notes except the note for $700 had been paid January 3, 1878, by Vogeler. Although some of them were indorsed or drawn in the firm name of Vogeler's firm, they were paid by him. Whether the $700 note has since been paid the evidence does not disclose.

Upon this statement of facts two questions arise—*First,* was the mortgage, as to the liabilities assumed by Vogeler for Taxis, in contravention of the bankrupt law? It has been frequently held that a security taken from an insolvent debtor, for money advanced to him at the time, is not within the inhibition of the bankrupt law. *Tiffany* v. *Boatman's Institution,* 18 Wall. 375.

And the same principle will apply to the security for a liability assumed upon which money is raised for the insolvent. But it is said the liability in this case was one which had been assumed prior to the giving of the mortgage, and the mortgage must, therefore, be regarded as a security for a pre-existing debt. The notes and indorsements secured by this mortgage were given before its date:—the proof shows that one was given upon its date, one after, and the balance before. But the testimony of Vogeler is clear and explicit, that before any of the notes were given it was agreed that they should be secured by a mortgage upon the specific property upon which it was afterwards given; and that before the agreement was made, that he and Taxis consulted an attorney to know whether such an agreement would be legal,

and was advised that it would be. The attorney testifies that about the middle of April he was advised by Taxis that such was the agreement, and that afterwards they came to him and he drew the mortgage for them. There is no testimony to contradict these statements. They must, therefore, be taken as true,—that this mortgage was executed in pursuance of an agreement made before the liability of Vogeler was incurred; and it would seem to be the law that a mortgage executed in pursuance of such an agreement is a valid and legal security. *Burdock* v. *Jackson*, 15 N. B. R. 318. *In re The Jackson Iron Manuf'g Co.* 15 N. B. R. 438, Judge Brown, after a very full review of the American and English cases, says: "I should feel no hesitation in sustaining a security given in pursuance of a valid promise made at the time of the advance to give specific security, afterwards executed; but to sustain such security given in pursuance of a promise in general terms would open the door to the very evils the bankrupt law was intended to prevent."

I think it is very clear that the true doctrine is as indicated by the judge. To sustain a mortgage upon a prior agreement to give it, it must be shown that the promise was to give a specific security, and it must have been made as the inducement upon which the advance was made. In this case, if we are to believe Mr. Vogeler, the promise was to give a definite and specific security, to-wit, to give a mortgage upon the Fifth street store, goods, and fixtures, and upon the Broadway fixtures, and that this promise was the sole inducement to make the advances; and, furthermore, that the mortgage was executed before the advances were completed; and I have no doubt, under such circumstances, that it was not necessary that the agreement to give the mortgage should have been in writing.

The case of *Loyd* v. *Strobridge*, 16 N. B. R. 198, is not in conflict with this opinion. In that case the promise to give security was a general promise "to give security if required." If such had been the agreement in this case, I would say without hesitation that it could not have been enforced. Again,

that promise related to real estate, and being in parol and no part performance, it could not have been enforced in a court of equity; but this related only to personal property, and would most certainly have been enforced against Taxis, otherwise it would have been a fraud upon Vogeler.

The *second* question grows out of the fact that the balance of $1,500 due on the original loan of $3,000, and for which Vogeler held an unrecorded chattel mortgage as security, was a part of the consideration for the mortgage now in controversy. If the unrecorded mortgage was a valid lien, it is clear that to that extent it would be simply an exchange of securities, and it is well settled that an exchange of securities is not in violation of the bankrupt law. *Cook* v. *Tullis*, 18 Wall. 340; *Clarke* v. *Iselin*, 21 Wall. 360; *Burnhisel* v. *Turner*, 22 Wall. 170; *Sawyer* v. *Turpin*, 91 U. S. 114. But it is claimed by the learned counsel for the assignee that under the statutes of Ohio the first mortgage, not having been recorded, was void as against creditors, and therefore void as against the assignee.

This presents a very important question. As between the mortgagor and mortgagee the mortgage was valid without record. It is only as against creditors that it is void. Does the assignee occupy the position of a creditor, and is it void as against him?

In *Yeatman* v. *Savings Institution*, 95 U. S. 766, Mr. Justice Harlan says: "The established rule is that, except in cases of attachments against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of the property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens, or encumbrances, whether created by operation of law, or by the act of the bankrupt, which existed against the property in the hands of the bankrupt. * * * He takes the property in the same 'plight and condition' that the bankrupt held it." But in *Casey* v. *Cavarack*, 96 U. S. 489, it is claimed that the supreme court has extended the

rights of the assignee to embrace such as a general creditor might have in regard to the property. In the opinion in this case no allusion is made, by the learned justice delivering it, to the case of *Yeatman* v. *The Savings Bank,* and the general language must be confined to the particular cases before the court.

The direct question in this case was before the supreme court in *Gibson* v. *Warden,* 14 Wall. 244, and Mr. Justice Swayne, delivering the opinion of the court, says: "In cases like this the assignees stand in the place of the bankrupt; his rights are their rights, and theirs, like the liens of judgments at law, are subordinate to all the prior liens, legal and equitable, upon the property in question." And again: "The statute of Ohio deprived the mortgage of effect until deposited, as to *creditors, subsequent purchasers, and mortgagees in good faith.* These assignees are neither." The law of this case was afterwards applied by Justice Hunt, *In re Charles Collins,* 12 N. B. R. 379, in which he held that an assignee could not impeach the validity of a mortgage which was void as against creditors on account of the omission to record it as required by state laws. *Gibson* v. *Warden* has neither been overruled nor doubted by the supreme court; on the contrary, I think, at the present term of the supreme court it has virtually been affirmed in *Stewart* v. *Platt,* 101 U. S. 731. In that case Simon Leland & Co. executed to A. T. Stewart chattel mortgages upon the furniture of the Metropolitan Hotel, situate in New York city. These mortgages were filed in New York city when the law of New York required them to be filed in the cities or towns where the individual members of the firm severally resided. After the giving of the mortgages, Leland & Co. went into bankruptcy, and their assignee filed a bill to set aside these mortgages because they were not filed as required by law; and the circuit court of the United States for the southern district of New York held the mortgages as against the assignee were invalid. The cause was taken to the supreme court, which reversed this part of the decision of the court below. The language

of the reported decision is as follows: "This court holds that although the chattel mortgages were void as against creditors because they were not filed in the proper place, they were valid as between the mortgagor and mortgagees without being filed, and that part of the proceeds of sale of the mortgage property which remained after liens of judgment creditors were discharged belonged not to the assignee in bankruptcy for purposes of his, but to the mortgagees."

This doctrine was recognized by the circuit judge of this circuit and applied in the case of *Cushing* v. *Horton* at the present term. The doctrine of these cases is conclusive upon this question. This mortgage, although unrecorded, was a valid lien against Otto Taxis, the bankrupt, and must be so held as against his assignee, and was, therefore, to the extent of the balance due thereon, a valid consideration for the new mortgage. But, if it were not so, the amount of liability assumed by Vogeler as consideration for the new mortgage was greater than the amount for which the property sold. The views expressed in regard to the validity of mortgages for present advances render it unnecessary to examine the question as to the insolvency of Otto Taxis at the time of the execution of the mortgages, or as to the knowledge of or cause for belief of his insolvency possessed by Vogeler, the mortgagee; thus leaving for determination the only remaining question, whether the parties in the execution and receipt of these mortgages acted in good faith or for a fraudulent purpose. From the evidence I am satisfied that the parties in the execution of both the mortgages acted in good faith, and not for any fraudulent purpose or design.

The bill will, therefore, be dismissed, and the assignee ordered to pay to the defendant the proceeds of the sale of the mortgage property after payment of costs.