In re KLINGAMAN.

(District Court, S. D. Iowa, E. D. May 22, 1900.)

BANKRUPTCY—PREFERENCES—TRANSFER OF PROPERTY.

Goods were sold on credit, with an agreement that the property was "pledged and hypothecated" to the vendors as collateral security for the payment of the price, and with authority to them to take possession and dispose of the goods, at their discretion, for security or reimbursement. It was not shown that the vendee was insolvent at this time; but afterwards the vendors, learning that he had become insolvent, procured the return to them of a portion of the goods, for the value of which they gave the vendee credit on the notes he had made for the purchase money. Within four months thereafter he became bankrupt. *Held*, that the vendors had received a preference, within the meaning of the bankruptcy act, by a transfer of property from the bankrupt, which was made at the time of the actual return of the goods to them, and not at the time of the contract of pledge and hypothecation; and, since its enforcement would enable them to obtain a larger proportion of their debt than other creditors, they could not prove a claim against the estate for the balance of the purchase money without surrendering the preference so received.

In Bankruptcy. On review of decision of referee in bankruptcy.

M. A. McCoid, for creditors.

SHIRAS, District Judge. From the certificate of the referee the facts in this case are shown to be as follows: On the 17th day of June, 1898, the firm of Luthy & Co., of Peoria, Ill., upon the order of Charles S. Klingaman, shipped to him some 4,000 pounds of binder twine; it being provided in the order that notes for the purchase price were to be given by Klingaman, payable on September 1, 1898, and it being also stipulated in the order that:

"All property delivered under this order, and the proceeds thereof, and the policies of insurance thereon, are hereby pledged and hypothecated to Luthy & Co. as collateral security for the payment as herein promised, and shall be held subject to their order, on demand, with authority to take possession and dispose of the same, at their discretion, for security or reimbursement."

On the 1st day of August, 1898, Luthy & Co., having learned that Klingaman was then insolvent, sent an agent to his place of business, who secured the return of $100 worth of the binder twine bought of Luthy & Co., for which credit was given Klingaman on the notes he had given for the purchase price of the twine. Within a few days thereafter Klingaman filed his petition in bankruptcy, and on the 12th of August, 1898, he was adjudged a bankrupt, and in due season a trustee of his estate was appointed. Luthy & Co. thereupon filed for allowance against the bankrupt estate a claim consisting of the

balance due them after giving credit for the $100 worth of goods received by them as above stated. To this claim objection was made on part of other creditors, on the ground that Luthy & Co. had in fact received a preference to the amount of $100, and should not be permitted to prove up a claim for the balance due unless they should surrender the preference received by them, as provided for in section 57 of the bankrupt act. The referee held that the provisions of the contract of purchase gave to Luthy & Co. an equitable lien upon the goods sold for the purchase price; that the trustee took the estate subject to all just liens or claims enforceable against the bankrupt; that the ordinary creditors were not protected by the provisions of the Code of Iowa regulating the recording of instruments affecting the title to personal property; and that the delivery to and reception by Luthy & Co. of the twine, under the facts shown in the evidence, did not constitute a preference under the bankrupt act, and therefore Luthy & Co. were entitled to prove up their claim without surrendering the property received by them. To this ruling the opposing creditors excepted, and now seek a review of the question by the court.

As I understand the facts of the case, at the time the twine was delivered back to Luthy & Co. Klingaman was then insolvent, and Luthy & Co. knew such to be the fact. By section 60 of the act it is declared that:

"A person shall be deemed to have given a preference, if, being insolvent, he had * * * made a transfer of any of his property, and the effect of * * * such transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

It cannot be questioned that if Luthy & Co. are permitted to retain the property delivered to them on August 1, 1898, and to prove up the balance of the debt due them, they will be enabled to secure a greater percentage of their debt than the general creditors; and therefore it is clear that the pivotal question is whether, as between Luthy & Co. and the contesting creditors, the transfer of the property in fact took place on the 1st day of August, 1898, or on the 17th day of June, 1898, the date of the contract of purchase,—it not being shown that on that date Klingaman was insolvent. It will be kept in mind that Luthy & Co., by their own act, in seeking to prove up their claim, have invoked the aid of the court in bankruptcy for the enforcement of the provisions of the act; and they cannot insist upon their right to share in the dividends payable from the estate unless they meet the obligations imposed upon them by the provisions of the act, which are intended to enforce the equitable rule, established by the act, that among the creditors equality is equity.

On behalf of the contesting creditors it is claimed that, as against them, the transfer of the property must be deemed to have taken place on the 1st of August, 1898, whereas on behalf of Luthy & Co. it is claimed that the actual delivery then made to them of the property in question was in pursuance of the terms of the contract of purchase; that this contract gave them an equitable lien upon the goods then sold to the bankrupt, which they could enforce at any

time; that, as it is not shown that Klingaman was insolvent when the contract of purchase was executed, giving the lien cannot be deemed to be a preference; and, therefore, they are not required to surrender the goods received by them, or account for the proceeds, as a condition precedent to the allowance of their claim. Under the provisions of the bankrupt act of 1867 it was held that a preference given by means of a chattel mortgage dated from the time of the delivery of the instrument, and not from the time when the same was recorded or possession thereunder was taken. Gibson v. Warden, 14 Wall. 244, 20 L. Ed. 797; Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235. In the act now in force it is enacted (in section 3) that a petition for adjudication may be filed against an insolvent debtor within four months after the commission of an act of bankruptcy, and that, when the act charged consists in having made a transfer of property with intent to defraud creditors, or for the purpose of giving a preference, the four-months period is to date from the recording or registering of the transfer, when that is done, or, if not, then from the time the beneficiary takes notorious, exclusive, and continuing possession of the property. Under this section it is clear that if the creditors of Klingaman had filed a petition for adjudication against him, on the ground that, being insolvent, he had given a preference to Luthy & Co., by transferring to them the goods received on August 1, 1898, the act of preference would have been held to have been committed on the day the goods were delivered, and not upon the day the lien was contracted for. In other words, the commission of an act of bankruptcy, by transferring property while insolvent to one or more creditors with intent to prefer them, is declared to be committed when the instrument of transfer is recorded or registered, or, if not recorded or registered, then when the beneficiary takes open possession of the property, or when the creditors have received actual notice of the transfer.

Under the prior act of 1867, the preference was held to have been given when a lien, valid between the parties thereto, was created, although no notice thereof was given to the other creditors. Under the present act a preference is not created until notice thereof is given to the other creditors, either by recording or registering the instrument of transfer, or by taking actual or open possession of the property by the creditor, or by giving actual notice of the transfer to the creditors. It does not seem possible that congress did not intend this change in the rule to apply to questions arising between a creditor claiming the benefit of a preference and the other creditors. This would require the holding that upon a petition filed by creditors, based upon an act of bankruptcy in giving a preference when insolvent, the act of bankruptcy must be held to have been committed when the creditor recorded the instrument of transfer or took open possession of the property; but if the trustee or creditors, after the adjudication has been had, should seek to avoid the same transfer, it would be held that the transfer constituting the preference took place when the mortgage or contract was delivered to the creditor, although the same was not recorded, nor was possession then taken of the property intended to be transferred. In my judgment, it was the purpose of

this enactment to declare generally that, with respect to acts of bankruptcy consisting of making transfers of property when insolvent with intent to give a preference, the act is to be held to have been committed when the transfer is made effectual as against other creditors by recording or registering the instrument of transfer, or by the beneficiary taking actual and open possession of the property, or by otherwise giving actual notice of the transfer to creditors. In other words, the intent of this section is to declare that, as against creditors of an insolvent, the limitation of time for invoking relief against a preference does not begin to run until in some form they have received actual or constructive notice of the transfer to the preferred creditor; and this intent is reached by the declaration that in such cases the transfer constituting the act of bankruptcy shall be held to date from the time the instrument of transfer is recorded, or the possession is taken, or notice is otherwise brought home to the creditors of the bankrupt.

The referee in this case correctly held that under the provisions of the Code of Iowa the failure to record the contract of purchase did not affect the validity of the equitable lien secured thereby as between the parties thereto, and that, as no subsequent lien had been obtained against the same up to the date when possession was taken on August 1, 1898, the lien was made effectual as against third parties by the act of taking possession; but the pivotal question under the bankrupt act is, when did this transfer take effect as against creditors, in the sense that thereby a preference was given to Luthy & Co.? If, as against creditors, it took effect on August 1, 1898, then it constituted a preference, as on that day Klingaman was insolvent, and Luthy & Co. knew it. If, however, the transfer, as against creditors, dates back to June 17, 1898, then it cannot be held to be a preference, as it is not shown that at that date Klingaman was insolvent. Under the provisions of the bankrupt act, it must be held, for the reasons already stated, that the transfer of the property to Luthy & Co. took effect on August 1st, and therefore this transfer constituted a preference to Luthy & Co.; and it follows that, under the provisions of section 57 of the bankrupt act, the claim of Luthy & Co. cannot be allowed, unless they surrender the preference they have received.

The ruling of the referee is therefore set aside, and the proceedings are remanded to him, with instructions to enter an order conforming to this opinion, and fixing some proper time within which Luthy & Co. may surrender the preference received, in case they so elect to do. The same order will be entered with respect to other claims of the same character, and to which this ruling is applicable.