### In re SHIRLEY.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1901.)

#### No. 970.

1. CHATTEL MORTGAGES—FAILURE TO RECORD—OHIO STATUTE.

Rev. St. Ohio, § 4150, which provides that a chattel mortgage, not accompanied by an immediate delivery followed by an actual and continued change of possession of the things mortgaged, "shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers and mortgagees in good faith," unless the mortgage or a copy thereof be forthwith deposited for record, as construed by the supreme court of the state, does not make such a mortgage void as between the parties, but only as against those creditors who between the date of its execution and its filing have taken steps to fasten upon the property for the payment of their debts; and upon the subsequent filing of such a mortgage it becomes a valid lien from that date, in the absence of fraud, as against the general creditors of the mortgagor.

2. SAME—EFFECT OF WITHHOLDING FROM RECORD—EVIDENCE OF FRAUD.

Under such statute an unrecorded mortgage, being absolutely void as against creditors of the mortgagor until it is recorded, until that time amounts to no more than an agreement to give a mortgage, and the mere fact that it was withheld from record does not constitute fraud as against other creditors, as to whom it would have created a valid lien if executed at the time it was filed.

3. SAME—ESTOPPEL.

A creditor which was selling goods to its debtor took a chattel mortgage to secure his past indebtedness, but agreed, at the instance and request of the debtor, to withhold such mortgage from record so long as he should pay a certain sum per month and should pay cash for subsequent purchases. The creditor supposed that it was furnishing the debtor with practically all the goods he purchased, and there was no actual fraudulent intent. *Held* that, under such circumstances, the mortgagee was not estopped from subsequently filing its mortgage and asserting its lien thereunder from that date upon property other than the mortgagor's stock, as against other creditors who had in the meantime sold goods to him, without the mortgagee's knowledge.

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of Ohio, in Bankruptcy.

For opinion below, see 109 Fed. 267.

This petition comes into this court to review an order in bankruptcy in the district court of the United States for the Northern district of Ohio, made upon the finding of the referee as to the validity of a certain chattel mortgage claimed by the firm of Benton, Myers & Co. upon the property of the bankrupt. Upon hearing, the referee held that the mortgage was invalid as against the creditors of the bankrupt. The district court reversed this order, and held that the chattel mortgage was a valid lien upon the fixtures described in it. The case was tried upon the following statement of facts: (1) That the bankrupt had been buying goods of Benton, Myers & Co., wholesale druggists, for a long period of time prior to August 7, 1899, and, upon that date, he executed and delivered to said firm a chattel mortgage upon his stock of goods and fixtures, said mortgage being given to secure—First, the payment of three notes, of $333 each, executed and dated October 5, 1897; and, second, the payment of a check for $210, dated August 14, 1899, all to secure a pre-existing indebtedness. (2) That said mortgage was not filed by said Benton, Myers & Co. until November 11, 1899, and was withheld from filing, at the request of said bankrupt, by agreement between the parties, and to be withheld so long as he paid Benton, Myers & Co. $50 per month on the indebtedness represented by the notes, and also paid the

check, it being then also agreed that said bankrupt, who was supposed by said Benton, Myers & Co. to be buying substantially all his goods from them, except cigars and such small articles not kept by them, should, in future, pay cash for all goods bought of them by said bankrupt, but that Benton, Myers & Co. took no steps to ascertain whether such supposition was a fact or not. (3) That the execution of said mortgage was demanded by said firm of Benton, Myers & Co., and bankrupt did not want to give it, and did not want it filed. (4) That at and after the time of execution and delivery of said chattel mortgage said Benton, Myers & Co. did not require, nor did bankrupt furnish or take, an inventory of stock mortgaged, and after, and from the time of its execution and delivery, the bankrupt, with the consent of Benton, Myers & Co., continued in possession of said stock, sold goods therefrom, and, out of the proceeds of sales, supported himself and family, and neither rendered, nor was he required to render, any account of sales to Benton, Myers & Co. (5) That after the making and delivery of said mortgage, and before the filing thereof, Strong, Cobb & Co., an Ohio partnership, from time to time sold and delivered bankrupt goods and merchandise on credit, and there is due and unpaid thereon the sum of $253.68 and interest from March 28, 1900. (6) Said Strong, Cobb & Co. made such sales and extended such credit in good faith, upon the strength that bankrupt's property was unincumbered. (7) Strong, Cobb & Co. had no notice of such mortgage until it was filed, but knew thereof as soon as filed, from mercantile agency report. (8) It is conceded by the receiver that said firm of Benton, Myers & Co. had no actual fraudulent motive in withholding said mortgage from record. (9) That bankrupt was insolvent at the time of making said chattel mortgage. (Above facts applicable to the claim of Strong, Cobb & Co.) As to other creditors, who are creditors for goods sold in the interval between execution and delivery and filing of the chattel mortgage: (1) The same facts as in paragraphs 1, 2, 3, 4, 8, 9, of the facts as to the claim of Strong, Cobb & Co. herein, which are hereby referred to and made part hereof by reference the same as if repeated herein. (2) The claims of Marcus Feder, Henry Thayer & Co., the Paris Medicine Company, Adolph Koepff, and the Bellaire Bottle Company arose from the sale and delivery of goods to the bankrupt, and the claim of the American Exchange National Bank and O. M. McAninch & Co. arose from credit extended to the bankrupt, all between August 7, 1899, and November 11, 1899; that none of said creditors at the time said claims arose had notice of said mortgage, and did not know thereof until the same had been filed. (3) That none of said creditors caused any examination to be made of the public record of mortgages before selling goods and extending said credit, or had any actual knowledge at the time whether such records disclosed mortgages on file or not, but that said Marcus Feder and the American Exchange National Bank relied upon statements made by said bankrupt as to his condition.

T. H. Bushnell, for petitioner.

G. A. Laubscher, for respondent.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The Revised Statutes of Ohio regulating the recording of chattel mortgages in Ohio provide (section 4150):

"A mortgage, or conveyance, intended to operate as a mortgage of goods and chattels, which is not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, subsequent purchasers, and mortgagees in good faith, unless the mortgage, or a true copy thereof, be forthwith deposited as directed in the next section."

This statute was construed in an early case by the supreme court of Ohio in a decision which has frequently been cited and remains

authoritative in the jurisprudence of the state. Wilson v. Leslie. reported in 20 Ohio, 161. In that case it was held that the statute declaring the mortgage absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be deposited forthwith, as directed in the act, did not make the mortgage void as between the parties thereto, but only avoided the instrument as to those creditors who, between the time of the execution of the mortgage and the filing thereof, had taken steps to "fasten upon the property for the payment of their debts." As against such as had in the interim secured liens by attachment, execution, or otherwise, the mortgage would be void. When filed with the recorder the instrument became valid as against all persons, except those whose rights have attached upon the property before the recording of the instrument. Judge Spalding, delivering the opinion, gives weight to mere delay in the filing of the mortgage only as important in determining the rights of the parties where it has been so great as to taint the transaction with fraud. In that case, it is true, there was no proof of any agreement to withhold the instrument from record, a circumstance which it is claimed should have a controlling effect in distinguishing it from the case now under consideration. But in a subsequent case before the supreme court commission of Ohio the court had occasion to deal with the effect of such an agreement. Stewart v. Hopkins, 30 Ohio St. 502. The mortgages in that case were upon realty, but the statute in reference to recording real estate and chattel mortgages is practically the same in effect, and the consequence of withholding from record is to make both classes of mortgages void as against creditors whose rights attach in the meantime. Betz v. Snyder, 48 Ohio St. 499, 28 N. E. 234, 13 L. R. A. 235. In Stewart v. Hopkins, supra, a loan had been made by Stewart & Co. of New York to Hopkins, a merchant in Cincinnati, of a large sum of money, to enable the latter to enlarge his business. The mortgages were withheld from record from June 22, 1866, until January 28, 1868. Upon the part of the attaching creditors it was claimed that there was a secret agreement to withhold the mortgages from record, which made them fraudulent as to the creditors. Speaking of this branch of the case, the court says:

"We are not justified in finding that there was an agreement to keep the mortgages from record, but, had that been the case, it would not, of itself, have rendered the mortgages void, though it would have been a matter for consideration, in connection with other facts, in determining the alleged fraud. Sawyer v. Turpin, 91 U. S. 114, 23 L. Ed. 235; Folsom v. Clemence, 111 Mass. 273."

This view was carried into the syllabus, and, under the Ohio rule, becomes the agreed law of the case.

The case cited from the supreme court of Massachusetts was a case of chattel mortgages on a stock of goods long withheld from record by an agreement with the mortgagee not to put them on record unless the mortgagor should have trouble. It was claimed that

this agreement avoided the mortgage. The trial court charged the jury "that although by the provisions of the General Statutes these mortgages were not valid as against third parties until recorded, yet as they were in fact recorded before the attachments by creditors, they took precedence of such claims unless they were originally fraudulent"; and again the judge added, "If there was an agreement between Grover and Harvey, the mortgagors, and the plaintiff, that the mortgages should not be recorded in the usual and ordinary course, for the reason that the recording thereof would injure the credit of the mortgagors or otherwise, and the mortgagee did not get them recorded until he feared that the mortgagors would not be able to pay, that was a matter entitled to consideration by the jury in passing upon the question whether the mortgages were given and received with the intent to hinder, delay, or defraud creditors." This instruction was approved by the Massachusetts supreme court.

We must regard the law of chattel mortgages to be settled in Ohio in accordance with the principles deduced from the cases cited, from which we are unable to discover any departure in other decisions of that state. The law of Ohio is controlling upon the federal court in questions arising upon the validity of chattel mortgages given and filed in that state upon property therein. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171. Applying the law thus settled to the finding of facts in the present case, we find a mortgage which, as against the contesting creditors, had no force and effect until filed with the proper officer. It was as ineffectual to create a lien as against them as a mere agreement for a mortgage would have been, but when properly executed and duly filed it became operative as against creditors who had not, before its filing, fastened some valid lien or right upon the property. It could only be avoided after such filing by proof of fraud in the making or withholding it from record. Looking to the agreed statement of facts, we find that the mortgage was given as between the parties to secure a valid indebtedness, and there is no finding that the agreement to withhold from record was actually fraudulent. It is true that it is found that Benton, Myers & Co. withheld the mortgage from record upon an agreement with the mortgagor so to do so long as $50 per month was paid on the indebtedness secured, and that the mortgagor in future should pay cash for all goods bought of the mortgagee, it being supposed that he was buying the most of his goods from the mortgagees. There is no finding that Benton, Myers & Co. misrepresented their interest in the property to creditors, or that they knew of the insolvency of the bankrupt; on the contrary, the finding of facts expressly states that they had no actually fraudulent motive in withholding the mortgage from record. While they did so, they had no lien that any other creditor was bound to respect, and the property might have been seized at any time by other creditors. When they filed the mortgage it became valid and only to be impeached for fraud. The withholding from record was a circumstance to which weight should

be given in determining the fraudulent character of the transaction. The finding has foreclosed any inference of actual fraudulent purpose which might have otherwise been inferred from the circumstances. Undoubtedly the withholding from record of the mortgage may be under such circumstances and for so long a time as to taint the security with fraud, as was suggested by Judge Spalding in the Wilson Case cited above. There may be such circumstance of knowledge on the part of the mortgagee of the purposes of the mortgagor to deal with others in the apparently unincumbered ownership of the property as would amount to fraud. In the present case we not only have the finding that actual fraud did not exist, but the further finding that Benton, Myers & Co. supposed the mortgagor to be buying substantially all of his goods from them, except cigars and other small articles not kept by them. We are not now dealing with a floating stock of goods, as the mortgagee only claims the security to be valid as to the fixtures. We reach the conclusion that under the Ohio statutes, as interpreted by the highest courts of the state, a chattel mortgage being wholly void as against certain creditors until filed, mere withholding it from record does not necessarily work a fraud upon the other creditors. Such withholding with the intent to defraud others undoubtedly invalidates the security. It is claimed that the mortgagee is estopped to assert his security as against others who dealt with the mortgagor on the faith of the property after the execution of the mortgage and before its record. But there can be no estoppel, in the absence of fraud, if the mortgagee simply held a security void until filed as against creditors who were at full liberty to assert their rights against the property. The mortgagor had an undoubted right to prefer creditors by giving to one a security denied to others. When the chattel mortgage is filed it becomes such preference only from the date of filing. Until filed it is void as to "creditors." While this term is used without limitation in the statute, as construed by the Ohio supreme court, it means such creditors as have fastened upon the property before the filing of the mortgage. All other creditors must assail the security for fraud in order to defeat the preference. The cases cited holding a contrary doctrine are from states with different statutes, or where the supreme court has given a different construction to a similar statute. Wilson v. Leslie has been interpreted and followed as justifying the construction we have given it in well-considered cases. Gibson v. Warden, 14 Wall. 244, 20 L. Ed. 797; Forrester v. Bank, 49 Neb. 655, 68 N. W. 1059; McVay v. English, 30 Kan. 368, 1 Pac. 795; Jones, Chat. Mortg. 270.

We think the court did not err in holding the chattel mortgage valid upon the fixtures, and the order will be affirmed.