### In re DAVIDSON.

(District Court, S. D. Iowa. January 11, 1901.)

1. BANKRUPTCY—VALIDITY OF LIENS—MORTGAGES GIVEN FOR PRESENT CONSIDERATION.

Mortgages taken by a bank from a merchant who was in fact insolvent, to secure loans made to him at the time, and which were properly recorded, are not avoided, under Bankr. Act 1898, by the bankruptcy of the borrower within four months thereafter, where both parties acted in good faith, and the bank did not have knowledge of the borrower's insolvency, although it knew he was indebted, and that the money was borrowed and used to pay creditors.

2. SAME—PREFERENCES—SUBSTITUTION OF SECURITIES.

A mortgage given by an insolvent, within four months prior to his bankruptcy, to a bank, in part to secure money then borrowed, and in part to secure an antecedent debt secured by collateral deposited when the debt was made, is not voidable as a preference, under Bankr. Act 1898, § 60, where the parties acted in good faith, without intention to give or receive a preference, and the collateral was surrendered on the substitution of the mortgage security.

In Bankruptcy. On review of decision of referee.

Lewis Miles and J. L. Parrish, for the bank.

S. G. Susemihl and S. G. Vanauken, for opposing creditors.

McPHERSON, District Judge. A petition in bankruptcy was filed against Davidson, July 28, 1899, and August 18, 1899, he was adjudged a bankrupt. The bankrupt did a general business as a merchant at Garden Grove, Iowa, selling implements, buggies, etc. He had a branch house at Cainesville, Mo. He was in business from October, 1898, until he was adjudged a bankrupt. The bank is a partnership concern, and Davidson did his banking business with the bank all the time he was in business as aforesaid. July 8, 1899, Davidson gave the bank a chattel mortgage covering 27 buggies and carriages located in a building a couple of blocks distant from his main warehouse, in Garden Grove, which mortgage was to secure $550 in money that day borrowed, and which money was parted with by the bank on the strength of the mortgage security. July 13, 1899, Davidson gave the bank another mortgage to secure $950. Of this sum on the delivery of the mortgage the bank gave him $355. The remaining $595 covered by the mortgage had been loaned him by the bank at a time five to eight weeks prior, to secure which the bank held notes of third parties aggregating $900. Upon receipt of this mortgage, the bank, in addition to the $355, turned him back the notes of the third parties for $900, all of which was one transaction. At the time of taking this mortgage the bank took possession

of the building in which the buggies were, and recorded the mortgage July 19, 1900. July 19, 1899, he gave the bank a mortgage on the Cainesville stock for $1,000 that day borrowed. On the following day he gave the bank a mortgage on his stock at Garden Grove, to secure $1,350 that day borrowed to pay one Rea, the former owner of the stock, which debt was then paid to Rea, but which was not due for about three months thereafter. The bank took possession of the Cainesville stock the day that mortgage was given, and of the other stock in two or three days thereafter. Shortly after the adjudication in bankruptcy and the appointment of a trustee the trustee took possession of all the mortgaged property, under a stipulation that the amounts secured thereby should be paid in so far as the mortgages should be sustained as valid by this court. About the same time these mortgages were being taken Davidson entered into a contract for the sale of his merchandise, taking farm lands in payment. The contract was not yet consummated, but was known of by the bank. As a matter of fact, Davidson was then insolvent. During the time he was doing business with the bank his account was overdrawn part of the time. At times the overdrafts were nominal. In March, 1899, it was $687.86; in April, $1,750.89; in May, $1,247.72; and in July, $102.59. The bank knew that the money he borrowed was for paying creditors. The bank has filed claims as preferred creditor. The foregoing facts are, in substance, found by the referee, and are in harmony with the evidence. The evidence warrants other findings, but, as it seems to me, none of them has controlling influence. The referee has reported, holding the mortgages to the bank to be void, as creating a preference. The bank asks for a review and reversal of the order. In addition to the foregoing facts, there is evidence tending to show that when the mortgages were taken the bank knew of Davidson's insolvency, and other evidence tending to show that it did not. I think the fair statement to make is that none of the bankers knew of the insolvency, but did know that he had debts in a considerable amount, soon to be due, and knew that he was borrowing money with which to pay debts.

Under the laws of both Iowa and Missouri, all of the transactions with the bank were lawful, and in no one of them was there any fraud. And I discover no fraud on the part of Davidson, and nothing done by him with the purpose of benefiting himself or a favored creditor at the expense of other creditors. In my judgment, he was a poor business man, and, in his way, knowing but little about his business, was struggling along, paying his creditors as best he could, as they pressed him for payment. And in his efforts he paid some of them with money borrowed from the bank. In no instance to the bank did he give a mortgage for an antecedent debt, excepting a part of the consideration of one; and in that case collaterals were surrendered, and the mortgage was in lieu thereof. But for such agreement the bank would have retained the property, and the contest would have been litigated in the state court, as since has been held by the supreme court.

Did the bank, in taking the mortgages, participate in preferences, within the meaning of the bankrupt statute? The answer to this

question, regardless of all other matters discussed by counsel, is decisive of the case. I do not believe the bank, in surrendering the collaterals when one mortgage was taken, changed its position in this case. Assuming that to be so, then it must be conceded that no antecedent debt was secured. When the bank would receive a mortgage, it would pay in cash the full amount. The net worth, either plus or minus, of the estate of Davidson, would remain the same. He still owned the same amount of property, and he still owed the same amount of debts. But, instead of owing John Doe and Richard Roe, he then owed the bank. And if John Doe and Richard Roe received payments within the four months, knowing of Davidson's insolvency, I suppose they could be compelled to refund to the trustee. But for some reason, satisfactory to the trustee and immaterial to the court, such action has not been brought, or, at least, is not now before the court.

So the question is, can a bank, knowing a merchant is hard pressed, loan the merchant money with which to pay his debts; the banker at the time, and as part of the same transaction, taking mortgage security, and but for which the money would not have been loaned? Or, putting it another way, can the merchant be allowed, hoping to pull through, to make an honest struggle for a business existence? The objecting creditors cite but one case so holding. Having great respect for the learned district judge in Massachusetts so holding, yet I cannot rely upon that case as an authority. The bank did not receive a preference. Without the mortgage, and in the absence of the supposed right to receive the mortgage, the bank would not have parted with its money. It is a very different case where one is already a creditor, and later insists upon and receives security. Then he may be held to have participated in the preference, with all responsibilities.

Of course, arguments in some cases, and loose language in others, may tend to support the contention of the objecting creditors. But I believe both the authoritative cases and the statute as well require me to hold that the mortgages in suit should be enforced. The statute certainly cannot be invoked to put an end to legitimate business. And if the statute does mean as is contended by the objecting creditors, then it is readily seen that no business can be transacted with a merchant from the moment he becomes embarrassed. In this case all parties did transact business with Davidson. The objecting creditors sold him goods without security. Afterwards they tried to get security. Failing that, they complain of one who took security at the time of the transaction. The bank is entitled to an order establishing the validity of its mortgages.