### In re SOUDAN MFG. CO.

### STITES v. DUNNAHOO.

(Circuit Court of Appeals, Seventh Circuit. February 12, 1902.)

No. 828.

1. **BANKRUPTCY—LIENS—VALIDITY.**

Under Bankr. Act 1898, § 67d, which provides that "liens given or accepted in good faith and not in contemplation of, or in fraud upon, this act, and for a present consideration, * * * shall not be affected by this act," the validity of a mortgage given to secure a present loan of money within four months prior to the borrower's bankruptcy does not depend upon his solvency at the time, or upon notice of his financial condition by the mortgagee, actual or constructive, but, to invalidate such a mortgage, it must be shown that the borrower was insolvent; that the purpose of the loan was to accomplish unlawful preferences, or otherwise violate the act; and that the lender knew, or was chargeable with notice of, both of such facts.

2. **SAME—MORTGAGE TO SECURE BORROWED MONEY.**

A mortgage on the plant of a manufacturing corporation to secure a loan of money made in good faith by the mortgagee, who was wholly unacquainted with the company, and acted through an agent, upon representations made by the president of the company and the report of an agent sent to examine the security, is not rendered void by the bankruptcy act, where the company was at the time a going concern, and actively conducting its business, and not known by the lender or his agent to be insolvent, although it was in fact insolvent and became a bankrupt within four months, and although the mortgagee knew that a large part of the money borrowed was to be used in paying outstanding unsecured debts.

3. **CHATTEL MORTGAGES—VALIDITY—INDIANA STATUTE.**

Under the laws of Indiana, as construed by its supreme court, the fact that a chattel mortgagee verbally agrees at the time the mortgage is given that the mortgagor may sell certain of the property covered thereby for his own benefit does not invalidate the mortgage as to other property to which such agreement does not apply.

Appeal from the District Court of the United States for the District of Indiana.

This appeal is from a judgment 'of the district court, sitting in bankruptcy, in the matter of Soudan Manufacturing Company, bankrupt, on review of findings by the referee, whereby a mortgage lien claimed by Robert N. Stites, appellant, against the plant, machinery, and tools of the bankrupt, is disallowed, and upon additional findings by the court the ruling of the referee that the mortgage "constitutes no valid existing lien on any of the property" of the bankrupt is affirmed. The Soudan Manufacturing Company, an Illinois corporation, had its plant, consisting of machinery, tools, and fixtures, at Elkhart, Ind., and was there engaged in the manufacture and sale of bicycles, while its president, A. H. Winters, resided at Chicago, Illinois. The mortgage in question was executed August 1, 1900, to secure a present loan of $12,500 by the appellant for the purposes of the corporation, and was duly recorded prior to August 10, 1900, when a creditors' petition was filed for an adjudication of bankruptcy against the corporation. In the course of proceedings thereupon the appellant filed his petition to have such mortgage declared a first lien upon the machinery, tools, and fixtures of the bankrupt with result as stated. The loan was made upon the mortgage security without previous business relations between the parties, with information that the corporation was carrying on an active business, was in need of funds to pay off existing indebtedness, especially to meet advances made by one Webber, to furnish relief from present embarrassment and increase the output; and relying upon an investigation alone of the title to and apparent value of the machinery and fixtures. then in operation as a going concern, and upon general statements on the part of Mr. Winters, the president, with no examination of the books of the corporation or other investigation of its financial standing and ability.

Smiley W. Chambers and James D. Andrews, for appellant.

George H. Peaks and James L. Harman, for appellees.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after the foregoing statement, delivered the opinion of the court.

The proof is undisputed that the mortgage in question was made and accepted to secure a present loan by the appellant to the corporation of $12,500, and that previous to the negotiations for the loan no transactions had taken place and no acquaintance existed between the principals; but the validity of the mortgage is assailed upon two propositions: (1) That the corporation was insolvent, and by the transaction gave a preference to two of its creditors,—one being its president,—and the appellant received the mortgage with notice of such insolvency and purpose, thus violating the provisions of the bankruptcy act; (2) that the mortgage covered stock, manufactured and in process, with an understanding outside the terms of the instrument that sales could be made therefrom, by and for the exclusive use of the mortgagor, and the entire security was thus invalidated under the law of Indiana. Unless one or the other of these contentions is sustainable, the appellant is entitled to the relief sought by his petition, as jurisdiction to that end, if questionable, was not questioned, and the express submission amounts to consent. Bryan v. Bernheimer, 181 U. S. 188, 197, 21 Sup. Ct. 557, 45 L. Ed. 814.

1. The mortgagor corporation was insolvent in fact, if not so considered by its president, and obtained the loan for the purpose of

paying up certain indebtedness, and with the effect of giving a preference to the creditors mentioned, within the definition of section 60a of the bankruptcy act; and while the appellant was not "the person receiving" such preference, "or to be benefited thereby," within section 60b, it is clear that the transaction violated section 67e of the act, if the loan was made upon the mortgage with notice that the corporation was then insolvent, and that it was intended thereby to accomplish unlawful preferences, or under circumstances which charge the appellant with notice that violation of the act was the purpose of the loan. It is equally clear that section 67d saves from invalidity the security thus founded upon a present consideration, if "accepted in good faith and not in contemplation of or in fraud upon this act," and, in the absence of notice which impeaches the good faith of the transaction as so defined, the mortgagee is entitled to the benefits of his lien, notwithstanding the fraud, if any there was, on the part of the mortgagor. In this view the inquiry is narrowed to the proof of facts and circumstances brought home to the appellant, or to the attorney who conducted the transaction for him, touching both the insolvency of the borrower and the unlawful purpose of the loan. The findings below are, in effect, that the corporation was insolvent when the loan was made, and the appellant had notice of such condition, of the use to be made of the loan, and had "reasonable cause to believe that it was intended thereby to give" preferences. Conceding for the moment that the insolvency and notice so found would justify the conclusion against the validity of the mortgage, the review upon this appeal cannot rest upon such findings alone. Section 25 provides for the appeal to be taken "as in equity cases," and thus removes the "cause entirely, subjecting the law and fact to a review and retrial." U. S. v. Goodwin, 7 Cranch, 108, 110, 3 L. Ed. 284; 1 Rose, Notes, 485. And thereupon the material facts must be ascertained from the testimony which is brought up for review.

For a considerable period prior to the loan in controversy, and up to the filing of the petition for involuntary bankruptcy, the corporation was actively engaged in the business of manufacturing and selling bicycles. The amount of invested capital does not appear, but its plant consisted of machinery, tools, and fixtures, the value of which depended largely upon successful operation of the business, estimated on behalf of the appellant, when the loan was made, at $25,000 to $30,000, and appraised as bankruptcy assets at $5,000. Mr. Winters, the president of the corporation, was a lawyer of Chicago, actively engaged in the practice of his profession; and his principal part in the business of the corporation was in connection with the finances, in the use of his personal credit and influence to obtain means for carrying on the operations of the company. Needful funds and credit were thus furnished, both through temporary loans made by his friends or clients upon collaterals of the company, and through a plan of "check-kiting," whereby Mr. Winters sent checks upon his Chicago bank, signed in blank, to be filled out and used by the company as required. Drafts or checks would then be forwarded by the company to him for the amount, and funds were provided to meet his Chicago check when presented, either through

friends, or by special arrangement at the bank. For the purpose of taking up indebtedness so incurred, and to provide a margin against future need for such expedients, Mr. Winters states that he applied to various parties for a loan, to be secured by mortgage upon the plant, and that Mr. Chancellor, an attorney representing the appellant, took the matter under consideration for his client, resulting in this loan of $12,500,—the appellant taking no personal part therein, except in making the checks, and acting wholly on the advice and representations of Mr. Chancellor; and the latter, on his behalf, examined and found clear title to the mortgaged property in the corporation, sent an appraiser to ascertain the value of the machinery, and, upon report thereof, advised the loan. The details of the representations made by Winters to Chancellor as to the financial condition of the company and the demands for the money do not appear in the testimony of either, but Chancellor's version is substantially this: That Winters, who was an acquaintance of his partner, but not of the witness, "stated that his company had a fine bicycle plant" at Elkhart, and "they were in need of money to push their business with, and they wanted to secure a loan"; that witness "told him to bring a list of the machinery in his plant," and he would look it over; that the list was brought, with valuations carried out, and delay occurred in making the examination; that Winters called frequently meantime, and finally mentioned that the delay had made it necessary for him to obtain from one Webber further advances, and the indebtedness to him was to be taken up through the loan; that he further stated that they needed the money to push the business with a view to consolidation with or sale to a New York concern; that all the statements tended to convince him that the company "was a live concern, a good concern transacting a large business and that their notes would be paid promptly"; and that he made no inquiries as to the solvency of the company, "because that question did not come up," and no suspicions were aroused in his mind at any time. The testimony of Winters, the other party to the transaction, is of like general tenor. He states that he acted on an inventory and statement made at the factory for the purpose, and showing approximately the following assets: Merchandise, $23,000; machinery, $27,000; tools, fixtures, etc., $3,000; accounts receivable, $8,257,—making over $60,000 of assets at fair valuation as a going concern, according to his information and belief, against $33,000 of total indebtedness, and that he believed the company to be solvent when he negotiated the loan. Whether this statement was exhibited to Chancellor, the witness does not recollect, and says, "I have not got a clear memory as to what was said with regard to the general standing of the company, because I don't think that was gone into at all." In the course of his testimony, however, he is reported as saying to Mr. Chancellor, in reference to the notes held by Webber, "That practically the company at the time those notes were made was in a state of bankruptcy"; and notwithstanding the subsequent correction of such remark, and its inconsistency with his entire version of the negotiations, the language so reported is the chief reliance for the conten-

tion that the appellant had ample warning that the company was insolvent. But the context and the explanation which follow show that the witness did not intend to state this as a remark made to Mr. Chancellor, but as a comment which he volunteered at the hearing—and the introductory word "That" was probably inserted by the stenographer by mistake. With parties of the ability of these negotiators for a loan, it is not probable that such statement of disability would either be made or pass unchallenged. As remarked by Winters in his denial, he "was not going to frighten the man off."

The testimony presents no ground for suspicion of actual fraud or collusion in the transaction, and on the part of the appellant and his attorney it is unquestionable that the loan was made as an interest-bearing investment, on the faith of the valuation reported of the mortgaged property as a going concern, and with the expectation of a continuance of operations to meet the payments. For the failure in expectation and judgment the appellant must bear the loss, but the bankrupt law does not invalidate his security for mere error in judgment. If he acted in good faith, contemplating no fraud upon the act, his remnant of security is left undisturbed, while mala fides on his part will deprive him even of benefit in that. On the issue so raised, the utmost that the testimony tends to show of notice of the financial condition of the company and the object of the loan is this: That the amount invested in the plant and material left it with insufficient funds to enlarge or carry on with profit a successful business; that it had been compelled to borrow, on short time and with collaterals, and was then owing several thousand dollars so borrowed, of which payment was required; that a permanent loan was urgently needed and desired to pay up such indebtedness and furnish means to push the business; and that the value of the plant was deemed sufficient to secure such loan. The conditions thus outlined cannot be treated as extraordinary in the line of manufacturing enterprise, and do not imply insolvency, as defined in the present bankruptcy act, in view of the valuation then placed upon the property by the appellant's appraiser. Notice of insolvency of the borrower, to impeach the bona fides of the loan, must be based on a valuation of assets in the condition existing when the loan was made, with the works in operation, and not on the appraised value after an adjudication of bankruptcy, whatever may be the rule for ascertaining the fact of insolvency when that issue is directly involved. So the appellant's knowledge of the intention to pay the indebtedness to Webber, and making his check for $5,522.29 to pay the same, and information that other portions of the loan were intended to pay debts of the company which had been met temporarily by Winters' "check-kiting" arrangement, do not affect the bona fides of the loan, in the absence of notice of insolvency.

The validity of this security, however, does not depend upon the solvency of the borrower, or upon notice, actual or constructive, of its financial condition. The policy of the bankrupt law respecting liens for a present consideration differs radically from its treatment of preferences generally, or security for an existing indebtedness. While a preference is voidable (vide section 60b) when accepted with

"reasonable cause to believe it was intended thereby to give a preference," and liens or security given to creditors within four months are declared void (section 67c, e, f), irrespective of notice, the provision which governs this case (section 67d) makes good faith on the part of the appellant the sole test. In the bankruptcy act of 1867 no express provision appeared for this class of security, but in Tiffany v. Institution, 18 Wall. 375, 388, 21 L. Ed. 868, the doctrine applicable to security given upon a present consideration was thus stated:

"There is nothing in the bankrupt law which interdicts the lending of money to a man in Darby's condition [an insolvent], if the purpose be honest, and the object not fraudulent. And it makes no difference that the lender had good reason to believe the borrower to be insolvent, if the loan was made in good faith, and without any intention to defeat the provisions of the bankrupt act. It is not difficult to see that in a season of pressure the power to raise money may be of immense value to a man in embarrassed circumstances. With it he might be saved from bankruptcy, and without it financial ruin would be inevitable. If the struggle to continue his business be an honest one, and not for the fraudulent purpose of diminishing his assets, it is not only not forbidden, but is commendable."

And it was thereupon held, in conformity with the rule in England, "that advances may be made in good faith to a debtor to carry on his business, no matter what his condition may be, and the party making these advances can lawfully take security at the time for their repayment." See 8 Notes on U. S. Reports, 190, citing cases which follow this rule; also the same case, before Dillon, circuit judge, and Treat and Krekel, district judges, under the title of Darby v. Institution, 1 Dill. 141, Fed. Cas. No. 3,571. In accordance with the view so held, the act of 1867 was subsequently amended to provide that nothing in section 35 of the act (section 5128, Rev. St.) "shall be construed to invalidate any loan of actual value, or the security therefor, made in good faith, upon a security taken in good faith on the occasion of making such loan." 18 Stat. pt. 3, c. 390, § 11. The like provision in the present act was obviously framed in the same view, and the rule so stated is equally applicable. In re Wolf, 98 Fed. 84, 3 Am. Bankr. R. 555; In re Davidson, 109 Fed. 882, 5 Am. Bankr. R. 528. We are of opinion, therefore, that the appellant's security is not invalid under the provisions of the bankruptcy act.

2. The contention that the mortgage is void under the law of Indiana rests upon two propositions: (1) That a general clause in the mortgage, after the schedule of machinery, tools, and fixtures, includes as well the stock on hand and in process of manufacture, and that the proof shows an understanding outside the instrument permitting sale of such stock, in usual course, by the mortgagor for its exclusive benefit; and (2) that such an agreement is fraudulent, under the statutes of the state, and invalidates the entire mortgage. Assuming, but not deciding, the first proposition to be well founded, we are of opinion that the second is untenable, for the reason that the question is one of local law, and the supreme court of Indiana has ruled decisively against the construction sought in this case in Davenport v. Foulke, 68 Ind. 382, 34 Am. Rep. 265, and Lockwood v. Harding, 79 Ind. 129, approving the like ruling in Barnet v. Fergus, 51 Ill. 352, 99 Am. Dec. 547. The doctrine of these cases, which governs the mort-

gage in question on the assumption indicated, is thus stated in Lockwood v. Harding, 79 Ind. 133:

"It is clear, therefore, that the chattel mortgage was, in any event, a valid and binding lien upon the [property not subject to such sale by the mortgagor], and that far forth it was not void in any view of the law."

The earlier cases indicating a different view are thereby overruled, and those cited in the opinion below and on the argument as holding contra—including, of course, In re Burrows, 7 Biss. 526, Fed. Cas. No. 2,204, and Stout v. Price, 24 Ind. App. 360, 55 N. E. 964, 56 N. E. 857—cannot be followed. The petition filed by the appellant claims only the property scheduled in the mortgage, comprising machinery, tools, and fixtures, whereof sale by the mortgagee is expressly prohibited by the terms of the instrument; and it is not claimed that the alleged agreement for sale applied to such property,—no lien being asserted against the stock or other personal property in the hands of the trustee,—and, upon the authority of the decisions referred to, the lien so asserted must be upheld.

The decree of the district court is reversed, with direction to allow the claim of the appellant in conformity with this opinion.