## WOOLDRIDGE v. WILLIAMS et al.

(Fourth Division.    Fairbanks.    June 13, 1914.)

No. 1916.

1. BANKRUPTCY ⬤⟿161(1)—PREFERENCE TO WIFE—TIME OF GIVING.

The husband executed a deed and a bill of sale as a chattel mortgage to his wife on February 3, 1912, in consideration of money advanced from her separate estate. The wife forwarded the instruments to an agent in Fairbanks, with instructions to have them recorded. Before they were filed for record the husband telephoned to the wife's agent to withhold them from record, which was done without the wife's knowledge. In August the wife first learned the instruments had not been recorded, and immediately caused them to be filed for record, and they were recorded on August 7, 1912. On October 28, 1912, the husband was declared a bankrupt and a trustee for his estate appointed, who brought this suit to vacate the conveyances to the wife as an alleged preference within four months of the declaration of bankruptcy. *Held*, as between the parties, the deed and bill of sale as a chattel mortgage were valid without record, and their record at any time prior to the declaration of bankruptcy conveyed title to the wife, and did not constitute an unlawful preference to her.

2. BANKRUPTCY ⬤⟿151—TITLE OF TRUSTEE.

A trustee in bankruptcy does not stand in the position of a subsequent innocent purchaser in good faith and for a valuable consideration, whose conveyance is first duly recorded, but under Act July 1, 1898, c. 541, § 70, 30 Stat. 565 (U. S. Comp. St. 1916, § 9654), he is vested with the title of the bankrupt to all property possessed by him at the date of the adjudication which is not exempt, and in addition, as to all property not in the custody of the bankruptcy court, he is deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied.

3. DEEDS · ⬤⟿82—RECORD—NECESSITY AS BETWEEN ORIGINAL PARTIES.

Under the statutes in force in Alaska conveyances of real property may be recorded, but a record is not required for all purposes. As between the parties themselves a conveyance is good without record.

The plaintiff, as trustee in bankruptcy of E. A. Williams, brought this action against Dora Williams and H. L. Lawson, her son, to set aside a certain deed and bill of sale, dated

⬤⟿See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

February 3, 1912, and recorded August 7, 1912, conveying all the real and personal property of the bankrupt to said Dora Williams. The complaint alleges that the instruments were "made and executed" February 3, 1912, but that there was no delivery thereof then, nor at any subsequent time, but that on August 7, 1912, the defendant Dora Williams surreptitiously obtained possession thereof, and caused the same to be recorded within four months of the adjudication of bankruptcy; that there was no consideration for either the deed or bill of sale, and no delivery of any property thereunder, but that the bankrupt remained in possession of the property until about August 10, 1912, when the defendants wrongfully took possession, which possession they have ever since maintained against the bankrupt and his trustee in bankruptcy; that the defendant Dora Williams claims to hold these instruments as security for an alleged claim against the bankrupt of $23,-688.60, but that such claim is false and unfounded; that on August 7, 1912, and at the time when Dora Williams took possession of said property, E. A. Williams was insolvent, which was well known to the said defendants, and that, if the defendants are allowed to hold said property under said instruments, they will thereby secure a preference over other creditors of the bankrupt, and that this was well known to the defendants.

The defendants answered, admitting the bankruptcy of E. A. Williams and the appointment of his trustee, but alleging that on February 3, 1912, the instruments mentioned were executed in consideration of the sum of $23,688.60 "then and there before paid and incurred by the said Dora Williams to and for him, the said E. A. Williams"; that she then and there entered into the possession of all said real and personal property, except a certain specified mining claim, and has since held possession thereof, and that the value of all the property so conveyed was not more than $4,000.

The evidence given upon the trial showed conclusively enough that the plaintiff's allegation that the conveyances were without consideration, and made in trust for the bankrupt for the purpose of defrauding his creditors, was without foundation, and was practically abandoned by the plaintiff. Plaintiff insisted, however, that the facts fully showed that at the time the instruments were recorded E. A. Williams was insolvent, and that such insolvency was well known to Dora

Williams, and that the effect of the conveyances at that time was to give her a preference over the other creditors of the bankrupt, and that such effect was well known to her at that time; that, the instruments having been recorded within four months of the bankruptcy adjudication, and their effect at that time being to give Dora Williams a preference, they are voidable by the trustee, and he may recover the property, or its value, from the defendants.

The evidence showed that prior to February 3, 1912, the defendant Dora Williams had loaned and advanced to the bankrupt, E. A. Williams, who was at that time her husband, from $13,000 to $15,000, belonging to her separate estate, and which she had received from the operation of a mining claim in which they both held interests in common; that the bankrupt was then engaged in mining, and had incurred considerable indebtedness, and needed further sums to carry on his mining operations, and that it was believed that such operations would be successful, and that during the following spring he could fully pay all his indebtedness; that Mrs. Williams insisted upon some security for the money she had loaned, and for future advances, and thereupon the parties came to Fairbanks, and the deed and bill of sale in question were signed and sealed by E. A. Williams, and delivered to Mrs. Williams by the notary public before whom they were acknowledged; that the instruments were then taken to the home of the parties on Engineer creek and placed in Mr. Williams' desk, and that a few days later Mrs. Williams sent them to Fairbanks, to the same notary before whom they were executed, with instructions for him to place them of record; that before they were recorded Mr. Williams telephoned instructions to hold them from record, but that Mrs. Williams did not know of this; that early in August, upon learning that they were not of record, she at once caused them to be recorded by her son, H. L. Lawson. There was also some evidence that Mr. Williams requested that the instruments be kept off the records, to keep his credit better, and that for a time Mrs. Williams acquiesced in this. Williams' operations were not successful, and the defendant H. L. Lawson took charge of them early in the spring, and washed up the dumps taken out during the winter, and used all the proceeds therefrom to pay off laborers and other creditors, and advanced a

considerable sum of his own money in addition to that advanced by his mother, and, after the mining operations were over, possession of the personal property and the one mining claim upon which work had been done, and where the parties resided, was kept by Mrs. Williams, or by her son for her. Williams was upon the property only at intervals during April and May, and in June and part of July was confined in the hospital at Fairbanks, but returned to the mining claim the latter part of July or in August, but did not stay there for any length of time. In addition to the sums advanced Williams before the execution of these instruments, Mrs. Williams loaned and advanced to Mr. Williams the sum of $7,854.60, part of this being paid on the day the instruments were executed, but after their execution, and the remainder either delivered to Williams himself, or paid to his creditors for his benefit, within two or three months after that date. The evidence also showed plainly enough that Williams was insolvent in February, 1912, and that Mrs. Williams knew this; but it also appeared that practically all of his indebtedness was due to her, or to laborers or persons who had furnished supplies for his mining operations, and that the purpose for which the money was borrowed was to pay off these other creditors. The only creditor standing on a different footing is one McConnell who recovered judgment against Williams in the state of Washington, upon which judgment suit was brought in this court in July 1912, and a judgment recovered August 31, 1912, for $2,680.93 and costs. The evidence did not show that property was transferred for the purpose of delaying or defrauding this creditor, nor that Mrs. Williams was endeavoring to secure a preference over any creditors.

Guy B. Erwin, A. R. Heilig, and Leroy Tozier, all of Fairbanks, for plaintiff.

Bion A. Dodge, of Fairbanks, for defendants.

FULLER, District Judge. It seems to be established by the evidence, therefore, that the conveyances were given by the bankrupt to Mrs. Williams, in part to secure an existing indebtedness, and in part for a present consideration then paid him, and for future advances; that she took possession of the property prior to a period of four months before the filing of the petition in bankruptcy, but that the instruments were

recorded within such period of four months. The only question to be decided, then, is the the effect to be given to sections 60b and 60c of the Bankruptcy Act, as amended by the acts of 1903 and 1910, which are as follows:

"b. If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or register ing of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And, for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction.

"c. If a creditor has been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estates, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from him."

Act July 1, 1898, c. 541, 30 Stat. 562, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799, and by Act June 25, 1910, c. 412, § 11, 36 Stat. 842 (U. S. Comp. St. 1916, § 9644).

As stated above, plaintiff contends that the instruments in question are such as are required by the statute to be recorded, and that the effect thereof, at the time of record, was to give Mrs. Williams a preference over other creditors; and there is no doubt that such is the effect, if the instruments did not come into operation until that time. On the other hand, if the instruments are to be given effect as of the date of their execution, no preference results under the Bankruptcy Act, in so far as they were given to secure advances made at that time or subsequently. It is only a lien given to secure an existing indebtedness that is voidable as a preference under the Bankruptcy Act.

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in

order to impart notice, shall, to the extent of such present consideration only, not be affected by this act." Section 67d.

Of the property described in the deed and bill of sale, the defendants upon the trial disclaimed all title except as to the personal property and the interest in one mining claim, the value of which does not exceed $6,500. Although the effect of the conveyances of February 3, 1912, was to give Mrs. Williams a preference under the Bankruptcy Act, in so far as she obtained security for the prior indebtedness, the effect was not to give her a preference in so far as she obtained security for the sums then and subsequently loaned and advanced. As the amount of such present consideration and future advances exceeds the value of the property transferred, she did not obtain any preference if the instruments speak as of that date, but clearly did obtain a preference if they speak as of the date of record, August 7, 1912, when all the consideration therefor was past.

Whether or not an instrument is required to be recorded under the bankruptcy laws depends upon the laws of the state or territory wherein the property is situated. Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577. It has been held that a state statute which requires a conveyance or transfer to be recorded in order to be effectual against any class or classes of persons, is a law by which recording is "required" within the meaning of the Bankruptcy Act of July 1, 1898 (see chapter 541, § 60a, as amended by Act Feb. 5, 1903; Loeser v. Savings Deposit Bank & Trust Co., 148 Fed. 975), and that "if recording be not required, unless required for all purposes, it could never be said to be required where the instrument is valid between the immediate parties without recording" (In re Beckhaus, 177 Fed. 141, 100 C. C. A. 561).

Undoubtedly, under the statutes in force in this district, conveyances of real property may be recorded (section 499, C. L. A.); but a record is not required for all purposes. As between the parties themselves, a conveyance is good without record.

"Every conveyance of real property within the district hereafter made which shall not be filed for record as provided in this chapter shall be void [as] against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or

any portion thereof, whose conveyance shall be first duly recorded." Section 524, Comp. Laws Alaska 1913.

A trustee in bankruptcy does not stand in the position of a subsequent innocent purchaser in good faith and for a valuable consideration, whose conveyance is first duly recorded, but under section 70 he is vested with the title of the bankrupt to all property possessed by him at the date of the adjudication which is not exempt (Coll. Bankr. 992), and in addition, under section 47a, as to all property not in the custody of the bankruptcy court, he is deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied. "Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens as against his estate." Section 67a. The trustee's title vests as of the date of the beginning of the bankruptcy proceedings, with the right in addition to enforce any claim or lien which any creditor might have enforced. This provision of the act must speak as of the time of the bankruptcy, and the trustee cannot therefore assert his lien to defeat rights secured before such time. Big Four Implement Company v. Wright, 207 Fed. 535, 125 C. C. A. 577, 47 L. R. A. (N. S.) 1223. Under laws somewhat similar to those of this jurisdiction it has been held that "creditors" are not all those to whom the bankrupt is indebted, but only those who have secured some lien upon his property, as by execution or attachment. Holt v. Crucible Steel Co., 224 U. S. 262, 32 Sup. Ct. 414, 56 L. Ed. 756; In re Charles Town L. & P. Co. (D. C.) 199 Fed. 850.

The Circuit Court of Appeals for the Ninth Circuit, in considering section 60b of the Bankruptcy Act as it stood after the amendment of 1903, and the laws of California concerning unrecorded instruments, held that the failure to record deeds given by a bankrupt until after his bankruptcy was adjudged was not, of itself, sufficient to make such deeds an unlawful preference within the meaning of sections 60a and 60b of the Bankruptcy Act, because under the California statute the instruments were valid as between the parties thereto and against the bankrupt's general creditors, without recordation, if otherwise free from vice. In re McIntosh, 150 Fed. 546, 80 C. C. A. 250. The effect of unrecorded instruments is, by the

California statute, expressly made the same as the effect which I understand such instruments have under the laws of Alaska.

From the facts in this case, it appears that no creditor had secured any lien upon any of the property of the bankrupt prior to the date of McConnell's judgment, August 31, 1912, which was subsequent to the time defendant's deed was recorded, and as the trustee's title did not vest until October 28, 1912, there is no right asserted which the trustee can enforce as against the defendants, if Mrs. Williams' deed was valid at the time it was recorded, and did not at that time constitute a preference. It had been held that under the Bankruptcy Act as it stood prior to the amendment of 1910, any conveyance recorded within four months prior to the bankruptcy, which at such time effected a preference, was voidable by the trustee (English v. Ross [D. C.] 140 Fed. 631); but this case, and others holding to the same effect, are considered at length in Debus v. Yates, 193 Fed. 427, and the conclusion reached that a conveyance which did not constitute a preference at the time of its execution, did not constitute a preference by reason of being recorded within four months of the beginning of the bankruptcy proceedings. The effect of the amendment of 1910 is considered at length in Re Watson (D. C.) 201 Fed. 962, and the same conclusion arrived at:

"Now the amendment of section 60b in 1910 in its terms says nothing whatever as to transfers to secure debts created simultaneously with the making of the transfer—i. e., for a present consideration—and it can be made to include such a transfer only by holding that where it calls for a transfer by the bankrupt of any of his property, without saying to whom, it was intended to include such a transfer as well as a transfer to or for the benefit of a then existing creditor, the only sense in which those words had theretofore been and were then used in section 60a. The necessary effect of the amendment is not to include such a transfer, and there is not the slightest indication that it was intended to include it. It is only by giving the words a broader meaning than given them in the source from which they were drawn that it can be made to include it, and the fact that thereby section 60b will be brought into conflict with section 67d is sufficient reason for not so doing. That it was not thought that the amendment of 1910 had any qualifying or modifying effect on section 67d is evident from the fact that it was amended at the same time so as to make it say in words what it had theretofore been held to mean, without any indication that it was thought to have any lesser effect after the amendments of 1910 than before. * * * In the case of In re Soudan Mfg. Co., 113 Fed. 804, 51 C. C. A. 476, Judge Seaman, in referring to the act as it was originally, said: 'The policy

of the bankrupt law respecting liens for a present consideration differs radically from its treatment of preferences generally or as security for an existing indebtedness.' I find no evidence in the amendments of 1903 and 1910 of any purpose to make any change in this difference so as to make it less radical. The amendments of 1903 to sections 60a and 60b indicate a purpose to prolong the time in which a recordable transfer in payment of or as security for an existing indebtedness may be attacked, and none other. And the amendment of 1910 to section 60b indicates a purpose to render such a transfer, which has been recorded, so that it can be judged as of the date when recorded, as well as when made, in determining whether it effects a preference and the transferee has reasonable cause to believe that it does so and none other." 201 Fed. 971, 972.

Under this construction of the law as it now stands, which seems to me to be correct, Mrs. Williams did not obtain a preference by the deed executed by the bankrupt, in so far as it gave her security for moneys then and subsequently loaned; and as such present consideration exceeds the value of the real property conveyed the trustee cannot recover such property from her in this suit.

A similar result follows as to the bill of sale, although this stands in a somewhat different position. It is conceded by both the parties that the bill of sale was intended as a chattel mortgage. Under the law, a chattel mortgage must be executed with certain formalities, and filed in the recorder's office, in order to be good as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value, unless the possession of the property be delivered to and retained by the mortgagee. Section 740, C. L. A. This bill of sale was not filed as a chattel mortgage. While it seems to have been recorded, there is no provision or law for recording bills of sale of personal property, and no effect whatever attaches to such record. The evidence, however, showed that possession of the property mentioned in the bill of sale was delivered to Mrs. Williams more than four months prior to the commencement of the bankruptcy proceedings, and was thereafter retained by her; and by thus taking possession she obtained full right to hold the property as security for the sums loaned, and, as the total of such sums exceeds the value of both the personal and real property conveyed to her, the trustee can no more recover the personal property than he could the real property.

Findings and the decree may be submitted, for plaintiff as to the property to which defendants disclaimed title, and otherwise dismissing the complaint, without costs to either party.